Good morning, Judge Hamilton. Good morning, Judge St. Eve. Good morning to all the lawyers in the courtroom and welcome to each and every one of you. Okay. The first case of the day is Appeal No. 22-1903, Eddie Bradley v. Village of University Park, Illinois. And before we hear from you, Mr. Kelleher, let me just note for everyone in the court or listening that after the second case, we will be taking a 10-minute break. Good morning. Good morning, Your Honors. Toothless is what a Seventh Circuit reversal would be without the mandate rule and law of the case. These doctrines are the judicial granite upon which this court's authority rests. Free rein on remand would reduce reversals to advisory opinions and bog litigants down by reviving ostensibly resolved issues. As such, any defiance of these doctrines should be resolutely resisted. May I stop you here, Mr. Kelleher, because I would like to focus just for a moment, if you would, on the district court's ruling denying your motion to strike the defendant's amended answer and affirmative defenses as untimely. Is there any claim that this was an abuse of discretion? And if there is, how was it an abuse of discretion? Your Honor, we did not press this argument on appeal. I will say it was an abuse of discretion as far as untimely goes because this argument, I should say, the argument regarding the mandate rule and law of the case was properly preserved. It was intact. We raised it in response to the judgment for pleadings, motion for sanctions, in response to the affirmative defenses, and of course, obviously, summary judgment. And one thing, Judge Roedner, that was unclear in the briefs, in hindsight, is the fact that the summary judgment was still pending before the we waived this argument. That's simply untrue. And I would point the court, Judge Roedner, to docket 119 at page 7. And that is the defendant's response to our summary judgment, which, of course, was filed after the affirmative defenses' filings. And on that page, the defendants argue nothing about waiver, firstly. But more importantly, they chastise Mr. Bradley because he raises this mandate rule and law of the case for a fourth time, essentially wasting the court's time, wasting their time, and essentially arguing that we're venting frustration with these rulings. So hopefully, Judge Roedner, I'm answering your question in a roundabout way. It was untimely in the sense that we did not file it within the 20 days per the rule, but ultimately, it was not waived by any stretch. The court, the district court, did not find that waived. And obviously, the defendants did not deem it waived because they continued to argue in response to our mandate rule and law of the case arguments. Mr. Keller, can I go back, please, to the underlying argument, what you have argued they conceded previously before the first appeal? It's not unusual for a lawyer or a party to concede something for purposes of appeal if it's not relevant to the appeal, with the caveat they're conceding it just for purposes of appeal. What's your best evidence here that the concession was not limited to just for purposes of appeal? The concession with respect to the protected property right? Certainly, Judge Zaney, three words in this case. And that's the language they use to quote it. In this case, the village defendants do not contest that plaintiff had a protected property interest in his employment. But they said that for purposes of the appeal, or they said that in connection with the appeal, is that correct? Yes. That's the first time they made that concession? That was the first time, Your Honor, they made that explicit concession. They did not concess it in the district court. And I will grant to the defendants, they did not explicitly concede it in the district court. They just simply didn't argue. But it wasn't relevant to the parrot decision. Do you agree? Well, yes and no. And if I can unpack that. Please. The problem we have here, and I think it's somewhat clear from the briefs, is Judge Norgal, he was not clear in what he wanted initially. And I think both parties, again, I will concede, we were a bit unclear. If you look at what the defendants filed in response to Judge Norgal's initial request, and that's docket 30, the defendants' response, look how they title it. They don't title it the parrot argument, the parrot defense. They title it motion in regards to the qualified immunity. So the defendants framed it as a qualified immunity defense. And it may have been unclear. I will certainly give you that. Right. And that's for all parties. I will include ourselves in that group. Certainly. So the problem is, regardless of whether it's parrot or more specifically qualified immunity, they never challenged the property interest in the district court. But it's different to not challenge it versus concede it. That's true. I would admit that. But then obviously on appeal, they do then say, again, in this case. And that's the premise of our position. It's not only what they said, but what they did not say. They did not say... Yes, Judge, over. They had a pending motion, as I recall, before the district court, asking to amend the answer in defenses to state that there was no valid contract. I mean, wouldn't that be evidence that if it's concession regarding a property interest would only be for the limited purposes of resolving the parrot issue? And furthermore, what should they have done, do you believe, to preserve the property interest question? A few things, Judge Robner. Firstly, to not state unequivocally in this case, the village defendants do not contest the plaintiff had a property interest. Secondly, they could have said, as Judge St. Eve notes, for purpose of this appeal, for purpose of this argument, for purpose of parrot. Those are very simple. I mean, lawyers are required to do that in any instance where they have to condition or preserve their argument. They could have even challenged the property interest issue if they so sought. I still believe that based on parrot, they were precluded from doing so because parrot presumes, presupposes a property interest is at issue because there cannot be an act that's random or unauthorized. You can't deprive something if there's no property interest. But to the point, Your Honor, they simply did not frame it in the alternative. And that is what they had to do, especially when they stated unequivocally that in this case. Additionally, Your Honor, we have the elephant in the room. That's this court's 75-page opinion. And in that opinion, the court was unequivocal in its findings. So even if, Your Honor, they had properly preserved it in the district court and we dispute that, it's simply, to be blunt, it doesn't matter. The issue of property interest simply wasn't contested in the first appeal. If we were, let me ask you, Mr. Kelleher, I would think there's an argument ordinarily on questions of whether issues have been preserved in the district court to give a fair amount of deference to the district judge who's closer to the case than we are. Do you think that would be appropriate to review for abuse of discretion in this case? I would say no, Judge Hamilton, because of the mandate rule in the law of the case. And because of the clarity. Well, the mandate rule in the law of the case are legal rules. But the question here has to, at least in my mind, has much more to do with the question of waiver.  Well, waiver on appeal, no, I would disagree with that, Your Honor. And we cite, I believe it's the Hernandez case. That is reviewed on appeal for de novo. Waiver and judicial estoppel, those are in our opening brief. We cite the standards as de novo. Well, we've said many times that judicial estoppel  We review for abuse of discretion. We've said that repeatedly. And it doesn't apply here anyway. Let me ask, if we were to disagree with you about whether this issue is foreclosed at this point, what is your best argument with respect to defendants' argument that the contract, the 2014 contract with Mr. Bradley was void from the beginning under the Illinois statutes? Judge Hamilton, the contract itself was signed, firstly, by Mayor Covington. So this concern of the district court, and in other cases, frankly, that a predecessor could tie the hands of a subsequent mayor or subsequent official. Could you address the issue in terms of the language of the statutes? And in 7b and 5c? Your Honor, I would say, well, I would also point, and I'm not sure if this is answering Your Honor's question, but the home rule authority, which the contract specifically cites, the contract, I should say, the parties, including Mayor Covington, acknowledged that this was a contract that the term would exceed the mayor's term or would exceed the normal process. And so this was due to the upheaval in the chief of police position. So all the concerns that the defendants express now simply don't exist. I understand the policy arguments. I know it sounds grotesquely unfair to somebody in Chief Bradley's position. But we have these statutes. What's the legal answer to say that contract was enforceable? I would point to the home rule authority. Where do we find that? Well, I don't have that statute in front of me. But there is Illinois provisions, which essentially it's home rule provisions. That excuse compliance with Section 7b and 5c on contracts? And allow a municipal government to enter into longer contracts? I would say yes, in the sense that this, maybe on rebuttal you could provide us with a more specific reference. Certainly. Let me shift. Can I just ask one quick follow-up? Has any case ever held that? Judge Hamilton has asked about the statute site. But if you could also check, has any case ever held that? Because I couldn't find one. Not to my knowledge. I don't believe there's any such cases. OK. Go ahead. Just a hope to sum up this. Is it your position as you stand here now that a municipal entity can contract around the municipal code provision? 7b, which prevents contracts that exceed the term of the mayor holding office at the time. Is that your position? Yes, because it was the mayor herself and the fact that they acknowledged and cited the home rule authority. But again, and I would also point to, just to circle back to the mandate rule in the case, again, the court found a breach of contract here. And so these were arguments, Judge Hamilton, vis-a-vis the defendants, that could have been raised. These weren't factual arguments regarding- Did the court found a breach of contract? Or the court, based on the concession, that there was a protected property interest? Now you're jumping to contract. Right, you're right. Yes, Judge Genevieve. It did find the village defendants did not comply with the 14th Amendment and the employment contract. And that's at page 880 of the opinion of the fed site. So again, so these were legal arguments that could have been raised initially. This was all within their knowledge, within the defendant's knowledge. Well, many arguments can be raised, but you don't have, as a defendant, you don't have to raise everything, just as a plaintiff doesn't have to raise every conceivable claim. Let me turn, if I could, to your statutory theory for finding a property interest, Mr. Kelleher. And I'm going to refer to the statute that ends in section 17, which says that all police officers and members of fire departments may be removed only for cause. The district court, while excusing arguable waiver from the defendants, said in its decision this go-around that you waived that argument. Could you address that point, please? Certainly, Your Honor. Frankly, I don't understand. I don't understand the district court's position on that. We cited these protections. There were four, to be exact, four statutory protections. Well, but 17 is the most important. You've got procedural protections under state law, which, frankly, we don't care about. They don't matter. What matters is the four-cause protection in section 17. Yes, Your Honor. To be quite frank, the analysis doesn't need to be expansive. But there wasn't an analysis on that. What the district court found was that you had cited the statute just to emphasize the procedural requirements, that you had not cited the statute as a basis for a protected property right. Well, I would disagree with that. Then you're going to have to show where you had cited it to support that you had a protected property right as opposed to for the procedural requirements. Well, we made the argument that these four statutory protections essentially limited the defendant's discretion. And it gave Mr. Bradley rights. Rights beyond what a normal employee would normally have. But in your summary judgment briefing, at least the way I read it and what the district court found is that you only cited these for the process element of your due process claim, not for the protected property interest element. So that's what the waiver of the property interest was based on, that you did not rely on your summary judgment briefing on the statute that Judge Hamilton just noticed as a basis for a property interest. The other idea is that it's so obvious to anybody who understands public employee due process if you've got four cause protection you've got a right to notice and an opportunity to be heard. But it's not there. It's not laid out as clearly as it might be just as the defendant's preservation of the property interest issue that they're arguing now is not as clear as it might be. The defense has responded on the section 17 argument that village ordinances have taken them out from under, or took Bradley out from under the protection of 17. Could you address those arguments? I'm sorry, Your Honor. The defense argues in essence that the Village of University Park opted out of the protections for the chief of police. And I was wondering if you could address that. Certainly, Your Honor. Now I understand. And that's another argument. I don't understand the district court obviously fixated on that as well essentially allowing the defendants to declare just on their own whim that they're not bound by these. There was nothing in any deposition or anything else. What about the Illinois Appellate Court's decision in Subcheck versus Village of Richmond where the court suggested there are two separate provisions of section 17. And the first one applies to officers but the second one is separate and distinct for the police chief. The first one doesn't apply to the police chief and it's the first one that gives the with cause. Are you familiar with that case? Yes, Your Honor. Vaguely. I would again simply reiterate the fact that this was never this was an argument raised basically for the first time in summary judgment. We were not aware of this. There was never any indication in any of the depositions. But as a matter of law, if you're asking us to apply the first provision of section 17 that requires cause to the police chief and the Illinois court has said it doesn't apply how can we do that? We would revert back then to the provision regarding police officers. But how could that apply? Isn't it correct that that decision from the Illinois court refers to it recognizes that section 17 separates the procedures that apply to an officer versus a chief. I don't see any language that removes the for cause protection. That's correct, Your Honor. But the for cause protection is in the statute, isn't it? Not with chiefs. I believe it's with the officers. Yes, Your Honor. It's not in the chief section. That's correct. And I would also point again to the fire and police board as well. There's again four distinct protections and Your Honors might find one may not apply. Obviously the defendants that's what the defendants contend but they're overlapping to some degree but they're also distinct. And when you combine the statutory protections with the contract and obviously with the concessions we would argue here that the district court erred. Mr. Kelleher we've been peppering you with questions so we are going to give you rebuttal time but before you sit down what about the idea that was raised by your opponents that if in fact you believe that this panel's first opinion in the matter resolved the procedural due process the contract and wage claims then why not immediately move for judgment in your favor on the remand? We certainly could have Your Honor. Obviously there were five state law counts no discovery excuse me, one deposition had been taken up until that point so we had not taken really much of any discovery, damages the state law counts so there were certain things that still had to be fleshed out you know we believed very strongly at that point on the defamation and whistleblower act counts. Obviously at this point we've distanced ourselves from those but at that stage again it was still even though it was a three or four year old case at that point it was still in its relative infancy but to answer your question we certainly could have and we would have been in our right to do so but we made the strategic decision to proceed with further discovery. Some judges only give one bite at the apple too I don't know if Judge Norgel is one of those that says only one summary judgment and no more. Yes and he may have here after no further questions I will rest. Thank you your honors Thank you Good morning Ms. Turiello Good morning your honors. May it please the court I want to start off with a point that came up during counsel's argument that we've made that the arguments regarding the mandate rule and the law of the case doctrine and any operation of waiver based on those doctrines have themselves been waived here this came up right away in counsel's argument and I want to fix some of the timelines that have been discussed in the briefs and clarify those. The record reflects that the district court allowed the filing of our amended answer and affirmative defenses in 2015. Plaintiff did not then renew the objections to our amended answer or affirmative defenses immediately instead there was a delay of five months that objection came in September of 2021 and the plaintiff in their reply brief tries to explain away that delay by suggesting that he was induced based on settlement negotiations that were ongoing. Is it your theory counsel that a plaintiff waives the right to challenge affirmative defenses by failing to object to an amendment to the answer? Yes. Yes. I mean, no, it was an amended answer and amended affirmative defenses. So what? It's like saying a defendant waives defenses by not moving to dismiss for failure to state a claim. In this instance the issue was they had raised it prior to these particular time frames we're talking about. The district court judge rejected those arguments and then we filed our amended answer and affirmative defenses and there was silence for five months. Did they miss any deadlines? They well they were under a 21 or 20 day deadline to come in and object. I mean and that's what the district court found. When do we move to a different subject? I don't think you have to object to parties. You don't waive by failing to object immediately to a pleading. My point is that when they say in their brief that they constantly and consistently invoked and raised at every juncture this issue, that is not in fact true. Did you file an, I'm sorry Judge Annalta. Did you, could you point us to where you informed this court in the first appeal that the property interest concession was limited to your motion to dismiss or the first appeal? Your Honor, we were stuck to be quite frank. Was there something that prevented you from pointing that out? Well yes. The district court didn't reach that issue. So what? The district court also issued an order saying that we had conceded it. There was nothing in the briefing on. Did you disagree with that? I didn't have what I needed to assert it. There were no facts in the record at that point about Ms. Covington, her election deadlines, her first term of office having expired in May of 2015, the ushering in of a new board. There was a non-incumbent elected. So we might not have been able to raise the issue as part of your motion to dismiss. I understand that. But did you ever alert this court that your clear concession about the property interest in that first appeal was limited to that appeal? I said in this case. Those were my words. And Mr. Kelleher is using that in a brief that was, I don't know, 50 some odd pages. Three words. Did you ever tell the district court? Go ahead. In this case, it's not for purposes of this appeal. There's a pretty big difference. When we got here on Bradley 1, I was consistent, being consistent with the posture of the case as it came here. We had an answer that conceded it by virtue of Rule 8. We had declared that it was a legal conclusion to which we weren't required to file an answer. So we had that. Look, what we see in summary judgment is something like for purposes of summary judgment, the defendant concedes. Or for these purposes only, the plaintiff concedes.  I don't know if any of that language here about the property interest. What do we make of that? You know. Again, I would point out that it was, I was dealing with a district court order that flatly said we had conceded it. I had an answer whereby we conceded it. I can't come here and ask to amend, I can't come to this court and say, oh, by the way. That undermines the position you're taking now. No, no. Look, when people come to the Court of Appeals they don't, and they think, we are often told that a district judge has made a mistake. Every single appeal. I understand that. And this was certainly waiting in the wings back at the district court. It was. Did you ever tell the district court before the first appeal that your concession on the property interest was limited to your motion to dismiss? No. The way it worked out, Judge, they had moved to strike 17 affirmative defenses that we had pled. We responded to that motion to strike, and in that response requested leave to file amended affirmative defenses. That motion to strike sat in front of the district court without a ruling. Then the district court, sua sponte, requested briefing on qualified immunity and McHallowett slash and ended up ruling on that and nothing got ruled on with respect to the motion to strike the affirmative defenses. It was declared moot in fact by the district court. So there was no, it was not raised in our brief, but there was good reason why it wasn't. Again, I was dealing with an order that said we had conceded it, an answer that conceded it by virtue of Rule 8. Nothing in the qualified immunity or parat briefing on either side. I'd point that out. Mr. Kelleher didn't argue in the briefing on qualified immunity or on parat. There was no section in those briefs that dealt with protected property interests existing. So when we got up... Does he have to brief it? My point being, when we got up on Bradley 1 here and then it was raised, my reaction was why are we talking about this? Because it wasn't briefed below and it's irrelevant to the parat analysis as well. We were here in Bradley 1 on what is the process that's due. So our arguments focused on, was Mayor Covington an administrative agency? Was Mayor Covington's alleged conduct unauthorized and random? Was Mayor Covington's letter a final determination for the purposes of allowing Mr. Bradley to go into administrative law review? Those were our arguments. And that was the focus and that's why the mandate rule and the law of the case doctrine are inapplicable here because what they're claiming the mandate to be is not in fact what it was. It was limited to parat. Ms. Trujillo, can I turn you to a different issue and that is the four cause protection under section 17 of the state statutes? Yes. You've asserted in your brief that two local ordinances opt out of that. 220-05 and 271-02D. Correct. I've looked at those and I'm looking for language that takes away the four cause protection in the statute for the chief. Can you help me out? I would say the ordinances could be drafted a little clearer in that regard. We have raised this in conjunction with our qualified immunity argument that we've made here on behalf of former Mayor Covington. That might help Mayor Covington. It might be relevant to punitive damages but with respect to the merits of Chief Bradley's claim I don't see I would think that statutory protection like four cause from a state statute if you're going to opt out of it under some authority would have to be done fairly clearly. It would be. I would agree. And the ordinances are not the most artfully drafted. To achieve that result. Yes. Is it your position that section 17 gives the chief of police four cause protection? I know you're saying the ordinance takes it away. But there are the provision that talks about the four cause protection provides that it's for officers but there's a next paragraph that talks about the chief. Correct. So I would say to your question it's a no because the provision we're talking about or that they want applied doesn't apply to Chief Bradley or former Chief Bradley. And none of this was briefed by the way here either. This is all. Their entire argument rests on your telling the district court that the mandate rule and the law of the case doctrine and that I waived things. I'm not so sure that their entire argument. They've raised a bunch of issues. But that is the main one. But they've also raised the alleged property interest under this particular statute. I understand. But where they where I believe they've faltered is they haven't discussed any of the evidence in the case. They went back and took depositions. There's no discussion. They're here basically saying they got a judgment from this court in Bradley 1 on a wage payment act claim. I don't know how that claim would have been in front of this court on Bradley 1 because it was something that the district court decided not to exercise supplemental jurisdiction over and said I'm going to dismiss it without prejudice and you can file it in state court. That point aside there is no discussion in their briefs about what the evidence bore out about a mutual assent for instance. They have not argued it came up make your best case for why your 2014 contract is valid. How do you get around these municipal code sections? And the truth of the matter is they haven't tried to do that in their brief either at all. It's all mandate rule, law of the case you already decided it, you entered judgment in my favor essentially on the procedural due process claim. And again we would say the court did no such thing. When we were here, we were here on pleadings. We were here on pleadings and what this court decided in Bradley 1 was that they had alleged sufficient facts or asserted sufficient facts in order to allege this claim and stay in federal court. That's what was decided. Nothing having to do with the protected property interest because we didn't need to go  and Mr. Kelleher said that this morning it is presumed that you're dealing with that, with a parat analysis. It's the level of process due. You have a random and unauthorized deprivation of a right what's the response? Is there an adequate state law remedy for you that precludes you from coming to federal court and maintaining a section 1983 claim? And this court found... You agree we answered that question. I agree you answered that question that we you cannot, when you've got Monel in the mix there can't be parat. There cannot be parat purposes. I agree you answered that question, Your Honor. Yes, and if I were here or went back on remand and tried to relitigate that issue, absolutely the mandate rule in the law of the case would prevent us from doing so. That's not what we did. And again, it's been brought up this morning as well. Judge Rovnar, you had mentioned, well, why the wait? Why the delay? Why not go back and seek judgment immediately? And counsel said, well, there were still some other issues to flesh out. They opened discovery. They reopened discovery, which is inconsistent with the position that this court's opinion in Bradley 1 left my case in tatters. They went back and reopened discovery. And to say, well, there were five state court counts that I still had to flesh out. Mind you, they're here before you today saying two of those state counts  as part of Bradley 1. That makes no sense. That's not what the court did here. So we would ask that your honors affirm the decision. Sorry, Judge. Oh, I'm sorry. I'm sorry. Go ahead. You finished what you were saying. I interrupted you. I'm sorry. I was wrapping up absent any additional questions from the panel. Ho, ho. Okay. Here I come. When the district court said in its opinion, let me just quote, here the defendants do not dispute that plaintiff's termination deprived him of a protected interest, end quote. Is it your position that the district court was wrong, or is it more nuanced than that? Would it have been more accurate to say for the time being the defendants do not dispute that termination deprived Bradley of a property interest? What do you think? It's more nuanced than that. And in fact, on the second go around, in the order denying our motion for judgment on the pleadings, the district court did just that and employed language that said to the effect, you know, at least for now, defendants have said there is a protected property interest here. And that was the language in the district court's order that denied our motion for judgment on the pleadings, and I would submit that would have been more accurate had the district court said that in the order that brought us to Bradley 1 versus what was said. But I mean, to the district court's credit though, again, the pleading we had filed was incorrect and contained a misstep in that we had said it was a legal conclusion to which we didn't have to respond. So, you know, and I think that was what the court was going off of, whereas when the district court denied our motion for judgment on the pleadings, by that point, we had talked about in our briefs to the district court that we had had this request to file amended answer and affirmative defenses and the district court recalled that and then corrected that language. Can any other employer do what you did? That is, enter into a contract, all the formalities there, and then walk away, say this was void, I had no authority to sign this for you? It's not as simple as that. I would say... What's more nuanced about it? Well, the fact that we had a new board. I mean, the law, these provisions in the municipal code that we are relying upon to say that the contract was void and incapable of creating a protected property interest, we had a non-incumbent that ran for election. I mean, they want to focus on, well, it was Covington who Covington signed the first one, Covington was still in office, what's the problem? We had a new trustee come on. And Covington, the record bears out, didn't want Mr. Bradley hired in 2013, didn't want him hired in 2014 either. She just didn't have a majority faction on her board to prevent that from happening. But as a result of the 2015 election, she did, and Mr. Bradley knew it was coming. He knew that he was going to be terminated and that is what the record bore out based on their request to reopen discovery after Bradley won, send us back, completely inconsistent with the notion that this court awarded judgment. So is it impossible to offer a new police chief any job protection past the next election? You hired Bradley out of retirement, right? Yes. Sometimes it can be hard to hire good people for these positions. There's a vacancy three, four months before the next election. Why should anybody take that job? Well, I suppose the contract could, I understand what you're saying, the contract could go for a short period of time and then be re-upped or ratified by ordinance or some other thing that someone could point to that would allow them to say, I have this protected right. But here, that didn't happen. So that would, perhaps to get some other an ordinance would certainly help that person in that case as another independent basis. Would it be sufficient to overcome the state statute? It may be, yeah. Maybe? I think it would be. Yeah. Any other employer we would treat this as fraud, right? I understand. Yes. But also a person who contracts with a municipality is presumed to know under Illinois law what those limitations are, so. Ms. Torriello, let me ask you a question that I asked Mr. Kelleher, and that is waiver is being slung around here in both directions. Regarding the property interest argument based on section 17 of the Illinois statutes with the four cause protection, I'm struggling with how the district judge could have found that plaintiffs waived that, by the way, they briefed that issue, but you hadn't waived the whole issue in the way that you handled it in Bradley 1 and earlier steps in the proceedings. Sauce for the goose, sauce for the gander, I find it hard to find waiver for one but not the other. Well, the circumstances, I think, are different in apples to orange comparison, but again, I don't think there's waiver here on our part because with Parade, it was an irrelevant consideration and we had to go with the record as it was when we got here. Despite our best attempts to try to get that issue in front of the district court, it did not happen that way before we came here and it wasn't, and this case isn't one where we didn't cede for the purposes of a litigation strategy or renege on positions, that's not what the record bears out that happened here, and the fact that at the nascent stages of this case, we went to the district court and attempted to raise amended affirmative defenses and it just turned out that it didn't happen because the court, the district court, sui sponte, sent us down the path of Parade and qualified immunity and ruled on that motion before anything was done with the motion to strike. Then why not explain that in Bradley 1 or put the caveat to the concession in Bradley 1? I understand and obviously in hindsight, wish that had been flushed out. My thought and analysis of Parade was that we didn't, we weren't on that issue and certainly that tracked the briefing below. But the concession doesn't appear to have any caveats the way it is. I obviously hope that is not how this court rules in the end, but I do thank you for your time and ask that you affirm the summary judgment ruling on behalf of my clients. Thank you, Ms. Torello. Thank you. Mr. Kelleher. Thank you, Judge Rovner. I'll try and be brief. Your Honors, firstly, virtually everything counsel has argued sinks on the fact that Appellate Docket 38, which is their en banc petition, not a single word about the contract finding of this court, not a single word about the property interest concession of this court or the municipal liability. They did not challenge, raise, or argue or say a word about any of these three points. So if the defendants had concerns about the findings in Bradley 1 when they filed their motion for an en banc, their petition for an en banc, they could have, should have, and had to file and argue challenges to these findings. Instead, they left them completely untouched. Additionally, Your Honors have asked about the forecaused protection issue. I'd also point out that this court found that Mr. Bradley had forecaused protection. I would point to the court's Bradley 1 opinion at page 899. The court literally says that this claim follows, quote, the mainstream of due process law for an employee with forecaused protection. So this is yet another plank of this case that has been taken out by Bradley 1 and taken from the district court's authority. So ultimately, what we have here, as we've argued in the briefs, is a heads-I-win, tails-you-lose position. That is the defendant's strategy. It's obviously extremely unfair. The court has found that in multiple cases that that's not permissible. Again, counsel struggles with why they did not specify their property interest concession. Parties do it every day as far as conditioning an argument, framing it in the alternative, or even, again, challenging it. They could have done those things, but they chose not to. They described our discussion, our two-paragraph discussion, in Bradley 1's brief, as superfluous. Again, this is just, it's simply, there's equity here that the court should take into consideration. Mr. Bradley has followed the procedures, both in his employment context and obviously in this litigation, and we would ask that, based on this court's de novo review, there's simply too much, whether it's the mandate rule, law of the case, waiver, judicial estoppel, these concessions, there's simply too much to affirm here. And final point, your honors, what would an affirmance be, what would be the precedential impact of an affirmance? What would the law of the case and mandate rule look like in this circuit with an affirmance? And we would posit that, again, the four cases that we cited, Delgado, Wilder, et al., this case is in that mold. With respect to George Norgal, he simply defied what this court ruled upon, and the rulings here were unequivocal. Mr. Kelleher, did you have anything you wanted to add on the contract point? Your honor, I do not. I apologize. I looked as far as the statutory authority goes, again, I would just argue that again, the home rule authority, we would look as far as the statutory authority, and obviously this court's finding in Bradley 1 that the contract was breached. And Judge Saini, the question that you asked of Mr. Kelleher, is there anything you would like to add? I had just asked to tack on to Judge Hamilton's question, if you were aware of any case law, and I know you only had a brief amount of time. Yes, I did not find any. Again, thank you, Your Honor, for your time. Thank you, Judge Roper. And thank you both for the argument, which as always will be taken under advisement.